566 So.2d 1380 (1990)
STATE of Florida, Appellant,
v.
Gary A. MOO YOUNG, Appellee.
No. 89-1531.
District Court of Appeal of Florida, First District.
September 21, 1990.
Robert A. Butterworth, Atty. Gen., Cynthia Shaw, Asst. Atty. Gen., and Richard E. Doran, Asst. Atty. Gen., Tallahassee, for appellant.
Wm. J. Sheppard and Cyra C. O'Daniel, of Sheppard and White, P.A., Jacksonville, for appellee.
SHIVERS, Chief Judge.
The State appeals a county court order granting defendant Moo Young's motion to dismiss information. The trial court found section 538.011, Florida Statutes (1987) (repealed 1989) to be "unconstitutionally vague allowing for arbitrary enforcement."
Section 538.011 requires precious metals dealers to make records and reports of purchases of precious metals. It provides *1381 that violations of the statute will be considered first-degree misdemeanors.
We reverse the trial court's finding that the language of section 538.011, Florida Statutes (1987) is unconstitutionally vague. State criminal statutes may be held void for vagueness under the due process clause where they either: (1) fail to give fair notice to persons of common intelligence as to what conduct is required or proscribed; or (2) encourage arbitrary and erratic enforcement. Although section 538.011 is clearly a state criminal statute, the federal district court in Mid-Fla Coin Exchange, Inc. v. Griffin, 529 F. Supp. 1006 (M.D.Fla. 1981) found that its predecessor statute (section 812.051) arguably fit within the narrow category of regulatory legislation which the United States Supreme Court had stated should be given greater leeway when challenged on vagueness grounds than those statutes aimed at regulating "purely individual behavior." 529 F. Supp. at 1027. Under this less stringent standard, section 538.011 would be found constitutional so long as it establishes a "reasonably definite standard of conduct." Id. at 1028. Because the statute contained no scienter or requirement of culpable intent, however, the court found it to be subject to the regular, higher, level of judicial scrutiny. Likewise, section 538.011, F.S. (1987) contains no requirement of knowing violation in order for the perpetrator to be found guilty of committing a first-degree misdemeanor. It thus appears that the regular test for vagueness applies in the instant case. See Newman v. Carson, 280 So.2d 426, 430 (Fla. 1973) finding section 811.165, F.S. (1970) (the predecessor statute to section 812.051) to be neither vague nor indefinite, using as its standard "whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice."
In Mid-Fla, the district court granted the plaintiffs' application for an order enjoining the enforcement of section 812.051, F.S. (1981), finding it to be likely that the plaintiffs would succeed on their claim that certain provisions of the statute violated the commerce clause, subjected precious metals dealers to unreasonable searches and seizures, and were unconstitutionally vague. Section 812.051, F.S. (1981) and its corresponding definition section, 812.049, are the predecessor statutes to current sections 538.01 and 538.021 (purchases by junk dealers, scrap metal processors, and foundries), as well as sections 538.01 and 538.011 (purchases by precious metals dealers).
In 1983, the regulation of metal dealers, processors, and founders was removed from Chapter 812 (Theft, Robbery, and Related Crimes), and given its own chapter (538). What had been contained within section 812.051 was then split into two separate sections  538.011, dealing with precious metals dealers, and 538.021, dealing with junk dealers, scrap metal processors, and foundries. Further, several substantive changes took place in the statutes.
Under its finding that the plaintiffs were likely to succeed on their claim that several provisions of section 812.051 were unconstitutionally vague, the district court in Mid-Fla specifically looked to five arguments made by the plaintiffs: (1) that it was impossible to determine whom the statute applied to, since its definition of "persons dealing in secondhand goods" could conceivably include persons dealing in "used cars, used electronic equipment, and other actions unrelated to the unstated purpose of the legislation." 529 F. Supp. at 1029; (2) that it was impossible to determine what objects the statute applied to, since the definition of "precious metals" could arguably include "a person buying any used item containing any trace of precious metals" who failed to keep the necessary records; (3) that the requirement that records be subject to inspection by "all law enforcement officers" was vague and ambiguous, arguably resulting in such absurd examples as inspection by Florida Game and Freshwater Fish Commission agents, visiting New York police officers, or FBI agents; (4) that the requirement that each record contain the seller's "driver's license and one other identifying number" could arguably be construed as exempting persons not possessing a driver's license; and *1382 (5) that the requirements that "the records" be preserved for three years and that "the records" be submitted to the sheriff within 24 hours of a purchase were contradictory, since no mention was made of photostatic copies and since it was obviously impossible for one set of records to be both preserved by the dealer and turned over to the proper authorities.
In light of the above, the court found "serious doubt that the statutes set out with a `reasonable degree of certainty' what conduct is required or proscribed on behalf of those subjected to their provisions... . Moreover, the ambiguous provisions of the statutes could operate to encourage arbitrary and erratic arrests and convictions." 529 F. Supp. at 1030.
As argued by appellant in its Initial Brief, however, each of these five arguable "defects" in section 812.051 were "cured" in section 538.011. First, section 538.01 excluded from the definition of precious metals "[a]ny chemical or automotive, photographic, electrical, medical, or dental materials or electronic parts," where such items had not been excluded in section 812.051. This change in section 538.01 specifically allays each of the concerns addressed by the court in Mid-Fla.
Second, the Legislature in 1983 changed the definition of "precious metals" from "any item previously sold at retail, containing any gold, silver, or platinum" (section 812.049(4)) to

any item containing any gold, silver, or platinum, or any combination thereof, excluding:
(a) Any chemical or any automotive, photographic, electrical, medical, or dental materials or electronic parts.
(b) Any coin with an intrinsic value less than its numismatic value.
(c) Any gold bullion coin.
(d) Any gold, silver, or platinum bullion that has been assayed and is properly marked as to its weight and fineness.
(e) Any coin which is mounted in a jewelry setting.
Section 538.01 (emphasis added). By so doing, it is obvious that the Legislature did intend for the record-keeping requirements of the statute to apply to the purchase of "any item containing any trace of precious metals" with the exception of the items listed in sub-sections (a) through (e), which were at least arguably unclear from the definition contained in section 812.051.
Third, where section 812.051(2) provided that records "shall at all times be subject to inspection of all law enforcement officers," section 538.016 (inspection of records and premises of precious metals dealers) provides that:
(1) The premises and required records of each precious metals dealer shall be inspected during regular business hours at least once every month by the sheriff's office of the county in which the dealer is located, if the dealer is located in the unincorporated area of the county, or by the police department of the municipality in which the dealer is located.
Fourth, where section 812.051 required dealers to include within their records the seller's "driver's license and other identifying number," section 538.011 requires the "driver's license number or the number from another form of identification issued by a government agency... ." (e.s.)
Fifth, and last, section 538.011(2) provides that "a copy of the records of any purchase of precious metal shall be submitted within 24 hours after the purchase to the sheriff of the county in which the business is operated," thus eliminating the Mid-Fla court's concern that the statute contained "inexplicably contradictory commands." 529 F. Supp. at 1029.
In sum, none of the points used by the Mid-Fla court to conclude that the plaintiff was reasonably likely to prevail on its vagueness challenge exist in the 1987 version of section 538.011. Further, using the test for vagueness set out in Mid-Fla and in Newman, supra, it appears that the language of section 538.011 conveys sufficiently definite warnings as to the conduct required and proscribed by the statute as measured by common understanding and practice. [As stated in appellee's answer brief, the constitutionality of section 812.051 was not determined at a trial on the *1383 merits in Mid-Fla. Further, the case was later dismissed by the parties with prejudice after the Legislature amended the statutes in 1983 with the adoption of Ch. 538.]
Likewise, in Diversified Numismatics, Inc. v. City of Orlando, 615 F. Supp. 141 (M.D.Fla. 1985) the federal district court found the Orlando ordinance to be unconstitutionally vague for three reasons: (1) the ordinance failed to set out the penalties for its violation; (2) it did not clearly set out who could be considered a dealer or how much precious metal an article had to contain; and (3) it did not clearly set out when a dealer's records must be open for inspection.
Section 538.011 suffers from none of those defects, as: (1) section 538.018 makes the statute's violation a first-degree misdemeanor; (2) the term "precious metals dealer" is clearly defined in section 538.01(2); (3) the amount of precious metal to be contained in an item is set out in section 538.01(1); and (4) section 538.016(1) states that a dealer's records may be inspected during regular business hours at least once per month.
Last, as pointed out by appellant, the Florida Supreme Court in Newman, supra, ruled in 1973 that section 811.165, F.S. (1970), the predecessor to section 812.051, was not unconstitutionally vague or ambiguous but constituted a valid exercise of the State's police powers. The Newman case was never referred to by the federal district court in Mid-Fla.
REVERSED.
MINER and WOLF, JJ., concur.